Bissell, P. J.,
dissenting.
With great regret I am compelled to withhold my assent to either of the opinions announced by my associates. Entertaining as I do profound respect for their views, I should doubtless yield my convictions and assent to the reversal of *69 the judgment did I not believe that I was bound by the decision of the supreme court, which as I read it logically concludes the question. As will be observed my brother Thomson concurs in my construction of the code provisions, supporting the position by strong and to my mind unanswerable arguments. I should doubtless simply accept his reasoning Avhich may not be at all strengthened by my treatment of the question, but being unable to accept his position on the inapplicability of the statute to the present case, I am constrained to fully express my convictions respecting the whole question. If our conclusions about the provisions of the code are correct, I am quite unable to see any escape from the affirmance of the judgment. Until the supreme court shall reverse the Stevenson case I am compelled under my theory of our judicial system to follow it. I insist that ease must be reversed to warrant a different result. I do not believe that court can either distinguish or modify it and support such a result by a logical argument which will be satisfactory to the profession.
The statement which is found in Judge Wilson’s opinion fully suggests the real and pivotal question, Avhether the lien of an attachment acquired by a sufficient levy of a writ continues after the execution of a forthcoming bond under the provisions of the code and may be enforced against one who subsequently obtains possession of the property by the foreclosure of a chattel mortgage executed by the attachment creditor after the levy but subsequent to the giving of the bond, and while he is in possession, where the mortgagee has no knowledge or notice of the levy other than what is constructively given him by the pendency of the suit and the knowledge afforded by the papers therein and the return of the officer. The question comes in this exact shape because the record discloses the fact to be that neither Winch nor Nichols had actual notice or knowledge of the making of the levy and the seizure of the goods, and no other than constructive notice that the apparent owner and possessor had no title. Whatever may be or might have been my own viéw- *70 and opinion respecting this proposition as a general question, as I look at it the case has been so far determined by the supreme court that I can discover no escape from the affirmance of this judgment. The matter has been considered in two separate cases (Edward v. Pomeroy, 8 Colo. 254; Stevenson v. Palmer, 14 Colo. 565) and in this court in Schneider v. Wallingford, 4 Colo. App. 150. In the last case, speaking by me as the president judge, the doctrine of the other two cases was followed and the same rule declared. At the outset it may be well to suggest, because considerable of the argument of counsel for the appellant is based on an attempted distinction between these cases and the present one, that in each of these cases the questions presented were of the respective rights of different attaching or execution creditors against the same common debtor. It is quite true the proposition respecting the rights of an innocent mortgagee, or an innocent purchaser were in no manner presented. It is equally clear the case in the 14th Colorado was based on a construction of the provision of the General Statutes applicable to justices’ courts hereinbefore referred to.
At the outset I will dispose of one of the contentions directed to the point that there is a wide difference in the language of section 2015 of the General Statutes of 1888, and the language of sections 111 and 112 of the code. The sole difference between the two is in the use of the words, “ the property shall be released from the attachment and delivered to the defendant;” while the phraseology of the justice’s act is simply, “ that the defendant may release all property which may have been seized by virtue of the attachment writ by executing the undertaking,” etc. The language of the code provision is a little broader, and under some circumstances, and with a different provision respecting the bond might possibly exhibit a different legislative purpose. I am unable, however, to discover any distinguishing difference in the language of the two provisions, or think that any con-trolling force ought to be given to the code provision which is not equally enforcible and applicable in the construction *71 of the justice’s act. I reach this conclusion because the provisions respecting the forthcoming bond, its terms and conditions are precisely the same in the one act as in the other. Since the supreme court rests its conclusions respecting the proper construction of section 2015 on the terms of the bond, I see no escape from the conclusion that the same principle must control the construction of the code enactment. I will now come to a consideration of these antecedent adjudications. I concede the proposition insisted on by counsel that none of the cases are in one sense an exact determination of the question. In Edwards v. Pomeroy, where a suit by attachment was begun and the defendant undertook to give a bond to release the property, suit was brought on the bond, and in the complaint there was an attempt to state the bond according to its legal effect. In this the pleader signally failed because there is a wide difference between the bond as pleaded and the bond offered in evidence. In the discussion of the right of the plaintiff to recover on a bond with its expressed conditions thus alleged and thus proven, the supreme court decided the requisites of the bond required by statute. The court conceded the principle insisted on by counsel respecting the purpose and effect of the statutory provision. In the concession the court undertook to state the rule respecting the lien right acquired by the levy of an attachment writ, and the effect of the giving of a forthcoming bond under the code, and stated in precise terms that the object and effect of the instrument was to release the property attached, but not to discharge the attachment. It is quite true this question was not necessarily involved in the decision, but that it was pertinent and germane to the inquiry before, the court must be conceded, and I must therefore accept this declaration as the view of the court respecting the proper construction of this statutory provision. When the question was next before the court it was decided by Justice Hayt in Stevenson v. Palmer. In that case Whitsett brought suit against Noxon and levied an attachment on the goods in controversy. The property was released by the *72 giving of a forthcoming bond according to the provisions of section 2015. The goods then went into N ox on’s possession and were again levied on in the suit of one Gaynor v. Noxon, and in this suit a forthcoming bond was also given. Thereafter the sureties on the bond undertook to bring suit to recover possession of the property in order to prevent the acquisition of a superior lien by the levy of a subsequent writ. The court undoubtedly held that the sureties were in no position to maintain replevin, having no right of possession, and construed this provision of the statute providing for a forthcoming bond after the levy of an attachment writ. As I look at it, this question was involved in the suit, pertinent to the controversy, properly considered, and in no sense are the declarations of the court on the case obiter.
In Schneider v. Wallingford, the controversy was between two attaching creditors, and following the decisions of the supreme court we reaffirmed the doctrine. It is quite true therein we said the court held that the lien could not be divested either by sale or by seizure or disposition by an officer under process. This in the general sense is true. With respect to the seizure by an officer under a subsequent writ, there is no question; with reference to sale, the principle decided is equally conclusive, though the limitation and excep-' tion which is here contended for because of the innocent character of the incumbrance was not under consideration nor expressly decided, though the exception was not noted in the statement of the principle, and therefore counsel very properly insist that Schneider v. Wallingford is not conclusive and it must now for the first time be considered.
The whole inquiry turns on the force, extent and character of the lien and the principle on which it rests, and its applicability to the conditions here existing. Counsel attempt to base arguments on the differences between the justice’s act and the code provisions, and insist that there are three classes of bonds provided for by the code and the justice’s act. It is evident I do not concede this point when I hold that the provisions of the code are the exact equivalent of *73 the conditions of the act and the bonds in the two cases are precisely the same. Under these circumstances there are but two classes of bonds, one of which has been referred to, and the other being provided for by section 91 of the code. Under section 91 whenever a suit is begun and a writ of attachment issues in aid of it, the defendant may give a bail bond to prevent the levy of the writ and the property never becomes subject to the lien. This is generally called a bail bond, and under all the authorities whenever such a bond is given the jus disponendi remains with the attachment defendant. When he has given this bond he may mortgage, sell or dispose of the property as though the writ had never issued because the property has never passed into the custody of the law, the plaintiff has never acquired a lien and the bond stands in place of the property. The other class is the forthcoming bond, and the case remains whether the power of disposition is with the defendant so that he may mortgage it to an incumbrancer who will thereby acquire title superior to the lien which flows from the levy. Stevenson v. Palmer discusses the question as to the effect of the giving of a forthcoming bond. The court recognizes the hopeless conflict in the authorities and refers to the Iowa cases and some text writers which lay down the doctrine that there after the giving of a forthcoming bond the property is subject to attachments, levies by execution or to sale as though the property had not been seized. The court then proceeds to cite other authorities and text writers which hold that the giving of a forthcoming bond does not discharge the property. The court adjudges that the alternative condition of the bond provided for by the act which is to redeliver the property to be applied in payment of the judgment, or in default that the defendant or sureties shall pay the full value of the property released to the extent of the amount of the judgment, is a legislative indorsement of the decisions of those courts which hold that the lien continues. The court relies largely on the condition of the bond, that the defendant.will redeliver the property and that the purpose of the redelivery is to sub-' *74 ject it to the payment of the judgment, and it is regarded as a fraud on the sureties to permit third parties to defeat a compliance with this condition. The court announces broadly that the better reason and the weight of authority support the doctrine that the attachment lien is not discharged by the giving of the bond. The court undoubtedly puts its decision likewise on the ground that the sureties have no other interest in the property than the right to have it preserved for delivery, and since they had not become liable they had no such title as gave them the right to possession, or to maintain suit against the officer. Counsel of course insist that the latter is the main proposition on which the case turned. Whether this be or be not true, the other is one of the points involved, and the court was compelled to decide what the rights of the respective attaching creditors were, and it was essential to their decision to determine the force and effect of the statute and the results flowing from the execution of such a bond, and we regard its decision on this proposition not as obiter, but as legitimate, and the conclusion of course as binding. It still remains to be determined whether the principle therein declared is so far reaching as to be conclusive on the rights of the parties to this suit. I see no escape from this conclusion. The decision declares the principle that the giving of a bond does not release the lien. This result is deduced from the terms' and conditions of the bond and the alternative provision that the property shall be redelivered to the officer to satisfy the judgment, providing the attachment is ultimately sustained. When it is decided that the lien remains, in my judgment, it necessarily follows that the lien must be superior to any right acquired by a subsequent mortgagee. There is a wide difference between a lien of this description and that resulting from a contract of parties. The supreme court has undoubtedly held conditional sales void under our statute except under certain conditions. Yet it decided that a conditional sale is perfectly good as between the parties, equally valid and binding as between them and third parties having notice of the condition at *75 tached to the transfer, only deciding that .the conditional sale is invalid as against those avIio become purchasers without knowledge of any defects inhering iii the apparent owner’s title. The principle on ivhich the case rests doubtless is that the vendor has put it in the power of the vendee to mislead innocent parties to their injury. No such principle is here involved. The attaching creditor did not deliver the property to the debtor nor consent to his resumption of possession. The law compelled the release of .the property and permitted the resumption of possession by the debtor. The principle thus far does not apply. Neither is it a question of a defense interposed by the sureties when sued, who according to the contention of counsel should not be permitted to interpose this claim because they voluntarily assumed the obligation of the bond and consented to the possession of the debtor. The sureties are not sued. It is a pure matter of right between the attaching creditor and a third party under circumstances which show that the creditor was in no manner a consenting party, that he did not put it in the power of the debtor to mislead or injure the other, but that what was done was done under legal compulsion, by the assertion of a statutory right which he was powerless to prevent, control or interfere with. In the present case, the right is one given by law. It is a lien given whenever a writ is properly issued and exactly executed. It is true the subsequent purchaser has no notice except that afforded by the records. It is likewise true that suits may be begun in any one of the very numerous courts in this county or in any other county in the state, and that the writs and papers may be in widely distant counties, and the doctrine of constructive notice may be inconvenient of application, but I do not understand that the argument ah ineonvenienti is one which can be used to overthrow a lien given by statute. It is not a thing resting on contract, nor do the facts present a case where one of two parties must suffer and one has put it in the power of the other to do him wrong. The right to give the bond is conferred by the statute, and the effect of *76 that bond is a matter purely of statutory declaration. If the giving of this bond and the clothing of the defendant with the apparent title resulting from possession works wrong and injustice to third parties, it is a wrong and an injustice worked out by the statute, and is only the subject of legislative correction and not of correction by judicial construction. It would likewise work a fraud on the sureties to hold otherwise. They contract to redeliver the property. A redelivery will protect them from liability. The preservation of the 'lien and an adjudication that the lien continues is within the spirit of their contract and permits its performance. If it is adjudged there is no lien the law then permits the debtor to defraud his sureties by a sale of the property or its incumbrance and they are remediless. The question is, does the lien remain ? If it remains as against subsequent attaching. lien and execution creditors, I am quite unable to see why it does not remain as to subsequent incumbrancers or bona fide purchasers. Under our statute all .interests of the defendant, whether legal or equitable, are subject to levy. If the defendant has an interest which he can- sell, or has an interest which he can incumber, I am quite unable to see why his interest which is the subject of sale and incumbrance may not be made the subject of levy either under an execution writ, or under a writ of attachment. The contrary may not be insisted on because in one case there is notice, and in another none, for the execution or the attachment may be in the hands of the successors of those who have made prior levies, or they may be officers in different counties who are without notice and knowledge of the outstanding levy. There is still a further reason and argument to be urged against the contention which is derived from the assertion of the principle that notwithstanding the giving of the forthcoming bond, the lien of the' appellant remains and the property is in the custody of the law. According to the cases the possession of the defendant is substituted for that of the officer and his custody is that of the officer. His holding is as much custodia legis as is the possession by the officer *77 or his custodian. It seems like a contradiction to assert that the lien remains,, and yet, to hold that the subsequent purchaser and incumbrancer takes title. This may be shown by what almost amounts to a reduetio ad absurdum. It is a lien, and a lien which remains notwithstanding the giving of the bond. It remains so long as the defendant holds the property. It does not remaM after he sells or incumbers it. If this be so it is not a lien at all because it is a lien which may be divested by the act of the party against whom the lien has arisen. It may be defeated by his acts without regard to the rights or wishes of the parties in whose favor it exists. Again, it is an absolutely valueless lien, if it only be a lien so long as the property remains in the possession of the defendant. In such case the defendant still holding the property when the original suit goes to judgment, whether the attachment be or be not sustained, the property being unsold and undisposed of, it is the subject of levy, and the plaintiff in the suit has precisely the same rights as though he had never issued an attachment. The other doctrine absolutely destroys the force and effect of the right and negatives the very idea of a lien. If to its enforcement it be necessary that the defendant remain in possession, it is a lien without value because the property may be subjected to levy as though no attachment had issued. The true theory of a lien is the preservation of the right of the plaintiff as against third parties. As against the defendant his writ is always enforcible whether with or without a lien. The lien is only indispensable to preserve the plaintiff’s rights in case the property passes into the hands of third parties. How it can be insisted that the lien is destroyed by the forthcoming bond to such an extent that the defendant may sell or incumber it, and yet it be conceded the supreme court is right in holding that the lien of the attachment remains because of the very alternative conditions contained in the bond, is quite beyond my comprehension.
If the lien exists it must be something more than a mere naked right only enforcible when and while the property is *78 in the defendant’s possession. Such a conclusion is wholly variant from the .legal right expressed by this term. A lien is in the broadest sense a property right. As put in Hoeble v. Myers, 132 B. W. 368: “Inasmuch as they had only a lien upon it (the fund), and had not completed their title, it is claimed no action will lie for relief. In taking this position, the defendants lose sight of the fact that a lien is property in the broad sense of the word, and although it has no physical existence, it exists by operation of law so effectually as to have pecuniary value, and to be capable of being bought and sold.” It cannot be divested or lost save by legal methods or by acts of the .party asserting it whereby he has lost it, deprived himself of the legal right to enforce it, or done some act which will in equity estop him from asserting it.
An argument may also be based on the very language of the act itself. Section 112 provides in case the plaintiff recovers judgment and the attachment is not dissolved, the plaintiff will redeliver the property; yet, according to the argument, the giving of the bond does in all essential respects and in all practical particulars absolutely dissolve the writ. This, of course, is only an added argument supporting the principle laid down by the supreme court .that the lien of attachment continues after the bond as well as before.
It seems to me those cases are conclusive of the present controversy, and the principle on which they are based absolutely determinative of the present inquiry. In my opinion the judgment should be affirmed. My associates conclude otherwise and the judgment must therefore be reversed.